**ORIGINAL**

**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

APR 28 2005

U.S. DISTRICT COURT
FLINT, MICHIGAN

JAMES A. SPEAR,

   Plaintiff,

vs.          CIVIL NO.: 02-CV-71953-DT

COMMISSIONER OF     HON. GERALD E. ROSEN
SOCIAL SECURITY,     MAG. JUDGE WALLACE CAPEL, JR.

   Defendant.
_____/

## REPORT AND RECOMMENDATION

### I. RECOMMENDATION

It is recommended that the Court grant Defendant's Motion for Summary Judgment and enter judgment for Defendant.

### II. REPORT

This is an action for judicial review of the Defendant Commissioner's final decision denying Plaintiff's application for supplemental security income [SSI] and disability insurance benefits [DIB]. Plaintiff filed for benefits on July 2, 1999, and on August 10, 2000, alleging that he has been disabled and unable to work since May 6, 1999,[1] due to a back injury. (TR 258-62, 266-69, 273). The Social Security Administration [SSA] denied benefits initially on September 13, 1999, and again on January 27, 2000. (TR 242-47, 249-51). A de novo hearing was held on August 9, 2000, before Administrative Law Judge [ALJ] Anthony B. Roshak. (TR 500-25). In a decision dated November

---

[1] This is the date on his most recent application of August 10, 2000. (TR 266). It is an amended onset date following Judge Kalt's decision of May 5, 1999, which is res judicata. (TR 503).

21, 2000, the ALJ found that Plaintiff could perform some sedentary work. (TR 16-26). Accordingly, Plaintiff was found not disabled. Plaintiff then made this appeal to district court.

### A.  PLAINTIFF'S TESTIMONY

Plaintiff was born on October 18, 1962, and was 37 at the time of the hearing. (TR 503-04). He stated that he is five feet, nine inches tall, and weighs one hundred and seventy-six pounds. (TR 504, 517-18). He stated that his normal weight is about one hundred and eighty-five or one hundred and eighty-six pounds.[2] (TR 518). Plaintiff stated that he is right handed. (TR 504). He stated that he is married and has five children ages twenty-two, twenty, twelve, seven, and two. Id. His wife works full-time. Id. He stated that he graduated from high school and has additional schooling as a building service technician and in computerized banking and finance. (TR 505).

Plaintiff testified that he lives in a two story home with a basement. (TR 504-05). He stated that he does not do any housework and watches television occasionally. (TR 505). He stated that he watches television for about thirty minutes a day and does not watch VCR movies or programs. Id. He stated that he does not go to church or visit friends or relatives. (TR 505, 506). He stated that he does not go out to the movies, nor is he involved in any sort of sporting activities. (TR 506). Plaintiff stated he puts together snap-together model cars as a hobby. Id. He stated that he does not do any work in the garden or his yard. Id. He also stated that he does not do the grocery shopping. (TR 507).

Plaintiff stated that he gets up in the morning at 5:30 or 6:00 on average, but that it varies. Id. He stated that he spends his days trying to relieve his pain. Id. He stated that he does stretches that he learned while in physical therapy and takes his medication. (TR 507, 520-21). He stated that his medication "kind of knocks [him] out." Id. He stated that he lays down and only eats about once a

---

[2] Plaintiff indicate that he attributes his weight loss to his back and lack of appetite. (TR 518).

day. (TR 507). He stated that he goes to bed around 1:00 or 2:00. Id. He stated that when he is not doing the above he helps his children with their homework, watches after his daughter, and his son helps him. (TR 520-21). He stated that he has a two-year-old. (TR 521).

Plaintiff testified that he smokes two cigarettes a week and does not drink alcoholic beverages. (TR 507-08). He stated that he used to drink, but has not since 1987. (TR 508). He stated that he does not, nor has he ever, taken illegal drugs. Id.

He stated that he is able to climb stairs, but only very slowly. Id. He stated that he needs help dressing, washing, and bathing. Id. He stated that he can only sit about twenty or thirty minutes and stand fifteen or forty minutes. Id. He stated that he can walk about three blocks. Id. He stated that he can manipulate his arms and fingers as well as pick up coins from a table and button his buttons on some days. (TR 508-09).

Plaintiff stated that the heaviest weight he could lift would be about ten pounds and the heaviest weight he could carry was about five pounds. (TR 509). Plaintiff stated that he could lift a gallon of milk weighing eight and a half pounds, but that he could not carry same without back pain. Id. He stated that he has difficulty bending, pushing, and pulling. Id. He reported that he does not have difficulty understanding or remembering detailed instructions, maintaining attention, or concentrating. (TR 509-10). He stated that he does not have problems with eyesight or hearing. (TR 510). Plaintiff reported that he has trouble with dust, fumes, and chemicals. Id. He also stated that he has trouble reaching up and out for things. Id. He stated that he sometimes has problems handling, seizing, holding, and grasping things. Id. He stated that he has trouble stooping over, kneeling, climbing, crawling, and crouching. (TR 510-11). He stated that when he was working, he did not have any problems getting along with supervisors or coworkers. (TR 511).

Plaintiff stated that he does not drive, but that he owns a 1986 Chrysler LeBaron, which is an automatic. Id. He stated that he does have a valid driver's license, as well as a Chauffeur's License that he applied for to drive a limo when he was young. (TR 511-12). He stated that he has not taken any long trips recently. (TR 512).

Plaintiff testified that he last worked in February 1996, when he injured his back. Id. His past work includes assembly worker, carpenter, van driver, tester, and security guard. (TR 512). He testified that he worked as a tester driving Jeeps, which required him to train for about a week in order to do the job. (TR 522). He stated that he is not currently receiving any worker's compensation and nothing is pending. (TR 512-13). He stated that he injured his back while at work and settled a worker's compensation claim back in 1997 for $18,000. (TR 513).

Plaintiff stated that he is disabled and cannot work due to the pain in his low back, middle back, and legs, as well as his medication. Id. He stated that he has not had surgery on his back. Id. Further, he stated that he also has chest problems related to his asthma which affect his ability to work. (TR 514). Additionally, he added that he has "stiffness in [his] neck, headaches, and tingly [sic] feelings in [his] fingers. Sometimes feel [sic] like [he's] standing on nails." Id. He stated that his medications cause drowsiness. Id. Plaintiff testified that he uses a cane because his "right leg gets numb and it goes out on" him. (TR 518). He stated that he uses his cane every day and it is a single prong cane. Id. He testified that Dr. Saha is his family and treating physician. (TR 514). He stated that he also has seen Dr. Roberts, Dr. Godham, a cardiologist, and Dr. Spahn. (TR 515). Plaintiff also stated that he is treating with Dr. Ryan, a neurologist, whom he saw within the month prior to the hearing. (TR 515-16). Plaintiff stated that he has not been hospitalized recently or ever treated at a pain clinic. (TR 516). However, he stated that he did have physical therapy at "Minnie Ford Riverview and Complete Fitness." Id.

Plaintiff testified that he has had some loss of control of his bowel and bladder. (TR 518). He stated that this is still a problem for him and occurs once or twice a week. (TR 519). He stated that he does not sleep well. He stated that he is also on medication for his heart due to "[p]alpitations, sharp pains shooting into [his] back, right, [and] left arm . . . [a] couple times a week." Id. He stated that the sharp pain sometimes lasts for thirty minutes to an hour. Id. He stated that he takes nitroglycerine for these sharp pains. (TR 520). He stated that he also experiences shortness of breath even when he is not active. (TR 519-20).

### B. MEDICAL EVIDENCE

Examination of the parties' cross-motions for summary judgment reveals that an additional recitation of the Plaintiff's medical evidence would be repetitive. The pertinent record medical evidence relied upon by this Court is fully articulated in the Analysis.[3]

### C. VOCATIONAL EXPERT'S TESTIMONY

Elizabeth Paskowski, a vocational expert [VE], testified at the hearing. (TR 521-24). She classified Plaintiff's past work as an assembler as unskilled and light; as a carpenter as unskilled and very heavy; as a security guard as semi-skilled and light; as a tester as unskilled and light; as a stockman as unskilled and medium; as a wheelchair van driver as semi-skilled and heavy; and as a landscaper as unskilled and heavy. (TR 523). The VE testified that Plaintiff had transferable driving skills to about 5,200 other semi-skilled light driving positions. Id. The ALJ presented a hypothetical question to the VE in which a claimant with Plaintiff's age, education, and work experience assuming full credibility, while "limiting ability to sit, stand, walk, lift, carry, push, or pull." (TR 523-24). The VE testified Plaintiff was not capable of his past work under these circumstances. (TR

---

[3] See Subpart E, supra, beginning on page 6.

524). The ALJ asked the VE to take into consideration the exertional limitations that Plaintiff testified to and whether any jobs existed that he could do. Id. The VE testified that sedentary and unskilled jobs with a sit/stand option existed for assembler, 4,800 positions; sorter-packer, 3,600 positions; information clerk, 1,300 positions; ID clerk, 1,100 positions; and visual security monitor, 1,400 positions. Id. The ALJ then asked the VE to take into consideration the non-exertional limitations that Plaintiff testified to and whether any jobs existed that he could do. Id. The VE stated that based on his testimony there would be a question of his ability to maintain any position due to his medication causing drowsiness. Id.

### D. ALJ'S CONCLUSIONS

After reviewing the testimony presented at the hearing and the medical evidence in the record, the ALJ found that Plaintiff suffered from "back pain, headaches, asthma, and atypical chest pain, impairments that are severe within the meaning of the Regulations" but that he does not have an impairment or combination of impairments set forth in Appendix 1, Subpart P, Regulations No. 4. (TR 21, 25). The ALJ found Plaintiff's testimony not to be credible. (TR 22, 25). He determined that Plaintiff had the residual functional capacity [RFC] "to perform a significant range of sedentary work." (TR 23-25). Thus, the ALJ concluded that Plaintiff is not eligible for disability. (TR 24-26).

### E. ANALYSIS

Plaintiff advances several claims in his Motion for Summary Judgment. Plaintiff's Motion for Summary Judgment argues that the ALJ's decision is not supported by substantial record evidence because objective medical evidence supports that his disability kept him from gainful employment and he was prescribed medication.[4] In response, Defendant's Motion for Summary

---

[4] Plaintiff's Motion for Summary Judgment filed April 18, 2005 (hereinafter "Plaintiff's Brief"). Note that Defendant received Plaintiff's Brief prior to filing their brief. Defendant's (Cont'd....)

Judgment contends that the ALJ's decision is supported by substantial evidence.[5] The matter is now ready for decision.

### 1. Standard of Review

This Court's review of the ALJ's conclusions is limited. The findings of the ALJ regarding Plaintiff's disabled status are conclusive if supported by substantial evidence based on the record as a whole. 42 U.S.C. § 405(g) (1997). Substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 401 (1971). It is more than a scintilla of evidence, but less than a preponderance of evidence. Brainard v. Secretary of Health and Human Servs., 889 F.2d 679, 681 (6th Cir. 1989). This standard presupposes that there is a "zone of choice" within which the ALJ may make a decision without being reversed. Felisky v. Bowen, 35 F.3d 1027, 1035 (6th Cir. 1994). Even if the court might arrive at a different conclusion, an administrative decision must be affirmed if it is supported by substantial evidence. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986). Finally, consideration of the whole record does not mean that the ALJ must mention or comment on each piece of evidence submitted. Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998). Applying these standards, I will analyze each of Plaintiff's claims.

#### a. Objective Medical Evidence

Plaintiff argues that objective medical evidence exists that supports a finding of disability. Specifically, Plaintiff argues in his brief that a 1999 CT Scan "revealed possible disc herniation at L4-5. Exhibit 4F.2. A nerve [sic] conduction study in October 1998 revealed findings that were consistent with lumbosacral radiculopathy. Exhibit 5F, and in July 2000 an EMG showed nerve root

---

(....cont'd) Motion for Summary Judgment filed November 1, 2004 (hereinafter "Defendant's Brief"), at page 12.

[5]Defendant's Brief at pages 11-19.

7

irritation at the S1 distribution Exhibit 12F." However, as Defendant argues, these reports say nothing about the severity of the alleged impairment,[6] as in Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988), the Court stated, "[t]he mere diagnosis of arthritis, of course, says nothing about the severity of the condition. Foster v. Bowen, 853 F.2d 483, 489 (6th Cir.1988) (diagnosable impairment not necessarily disabling)."

Therefore, the fact that Plaintiff may have possible disc herniation, nerve root impingement, and lumbosacral radiculopathy does not necessarily mean that he cannot work. Here, the ALJ went all the way back to 1995 and reviewed the medical evidence, despite the fact that the onset date was May 1999. (TR 18-19). He noted the aforementioned evidence argued by Plaintiff. (TR 19-21). The ALJ found that although Plaintiff had impairments, including back pain, they were not severe and properly went on to the next step to determine whether Plaintiff could do his past relevant work or other work existing in significant numbers. The ALJ specifically stated

> [t]here is no conclusive evidence that Claimant has any disc herniation in the lumbar spine. An MRI in 1999 was essentially normal, as was an MRI in 1996 (Exhibit 12F). Electrodiagnostic studies of October 14, 1996 revealed S1 root irritation on the right. However, there were no positive waves in the paraspinal region and no indication of S1 compressive radiculopathy (Exhibit 8F, p.22). There are no abnormal medical findings to account for Claimant's alleged bladder and bowel incontinence.

(TR 21). The Court is aware that

> the discretion [is] vested in the ALJ to weigh all the evidence. Myers v. Richardson, 471 F.2d 1265 (6th Cir.1972); Villarreal v. Secretary of Health and Human Services, 818 F.2d 461 (6th Cir.1987). Moreover, we hold that "the court may not try the case *de novo* nor resolve conflicts in evidence, nor decide questions of credibility." Gaffney v. Bowen, 825 F.2d 98, 100 (6th Cir.1987).

Bradley v. Sec'y of Health & Human Servs., 862 F.2d 1224, 1227-1228 (C.A. 6 (Ky.),1988).

---

[6] Defendant's Brief at page 12.

8

### b. Credibility

The ALJ properly evaluated Plaintiff's credibility. The Court is well aware that "[i]f an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so." See Auer v. Sec'y of Health & Human Servs., 830 F.2d 594, 595 (6th Cir. 1987); Felisky, 35 F.3d 1027 at 1036. In addition, the court recognizes that "[i]t is more than merely 'helpful' for the ALJ to articulate reasons ... for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." Zblewski v. Schweiker, 732 F.2d 75, 78 (7th Cir. 1984). Hurst v. Sec'y of Health and Human Servs., 753 F.2d 517, 519 (6th Cir. 1985).

> When determining credibility, in addition to the objective medical evidence, the ALJ must also consider:
> 1. The individual's daily activities;
> 2. The location, duration, frequency, and intensity of the individual's pain or other symptoms;
> 3. Factors that precipitate and aggravate the symptoms;
> 4. The type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;
> 5. Treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;
> 6. Any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 minutes to 20 minutes every hour, or sleeping on a board); and
> 7. Any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

Ridge v. Barnhart, 232 F.Supp.2d 775, 790-91 (N.D. Ohio 2002). [T]he Sixth Circuit has also articulated the standard with a two step analysis:

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so then: 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

9

McCoy on Behalf of McCoy v. Chater, 81 F.3d 44, 47 (6th Cir. 1995) (quoting Stanley v. Sec'y of Health and Human Servs., 39 F.3d 115, 117 (6th Cir.1994) (citing Jones v. Sec'y of Health and Human Servs., 945 F.2d 1365, 1369 (6th Cir.1991) and (quoting Duncan v. Sec'y of Health and Human Servs., 801 F.2d 847, 853 (6th Cir. 1986)).

Although, Plaintiff makes mention of his medications in his brief, the ALJ did state reasons for rejecting Plaintiff's complaints in compliance with the aforementioned factors and tests. The ALJ noted that Plaintiff has never reported to his physicians that his medications cause drowsiness (TR 22), and where "[t]he claimant complained of side effects from his [or her] medication for the first time at the hearing, [and] none of the medical reports indicate that he or [she] complained to a doctor about the side effects," such a complaint is not entitled to credibility. Steiner v. Sec'y of Health and Human Servs., 859 F.2d 1228, 1231 (6th Cir. 1987). The ALJ also noted that Plaintiff had never been to a pain clinic. (TR 22). The ALJ noted that both Plaintiff's heart condition and asthma were controlled with medication when need. Id. Further, Plaintiff stated that he had weight loss, but from 1998 to 2000, the ALJ noted that his physician indicated a seven pound weight gain. Id. Additionally, the ALJ found that Plaintiff's need for a cane was not evidenced in the medical record. Id. The ALJ also noted that Plaintiff was able to stand on his toes and heels during a neurological examination. Id. As for Plaintiff's daily activities, the ALJ acknowledged that Plaintiff does not do household chores, although he does watch his two-year-old daughter while his wife is at work. Id.

The ALJ set forth his reasons for rejecting Plaintiff's credibility as required; therefore, the "ALJ's findings based on the credibility of the applicant are to be accorded great weight and

deference," and should not be disturbed. Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 531 (6th Cir. 1997) (citation omitted).

### c.     RFC Assessment

Although Plaintiff does not challenges the ALJ's findings, further, the undersigned notes that the ALJ properly evaluated his RFC. As the Defendant points out, the ALJ gave more credence to Plaintiff's limitations than either his treating physicians or examining medical professionals.[7] For example, the medical examiner found that Plaintiff was capable of light work (See TR 338-39), whereas the ALJ found that Plaintiff could only do sedentary work. (TR 22).

### III.    CONCLUSION

For the reasons stated, I find that the ALJ's decision denying Plaintiff benefits is substantially supported in the record. Accordingly, I respectfully recommend that the Court **GRANT** Defendant's Motion for Summary Judgment, and enter judgment for Defendant Commissioner.

Pursuant to Fed.R.Civ.P. 72(b) and 28 U.S.C. § 636(b)(1), the parties are hereby notified that within ten days after being served with a copy of the recommendation they may serve and file specific, written objection within ten days after being served with a copy thereof. The parties are further informed that failure to timely file objections may constitute a waiver of any further right of appeal to the United States Court of Appeals. United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

---

[7] Defendant's Brief at pages 15 and 18.

11

In accordance with the provisions of Fed.R.Civ.P. 6(b), the court in its discretion, may enlarge the period of time in which to file objections to this report.

WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

Dated: __APR 2 8 2005__

ORIGINAL



FILED

APR 28 2005

U.S. DISTRICT COURT
FLINT, MICHIGAN

**CERTIFICATION OF SERVICE**

UNITED STATES OF AMERICA )     CASE NO.: 02-CV-71953-DT
                                 ) ss
EASTERN DISTRICT OF MICHIGAN )

I, the undersigned, hereby certify that I have on the 28th day of April 2005, mailed copies of the "Report and Recommendation," in the foregoing cause, pursuant to Rule 77(Davenport), Fed.R.Civ.P., to the following parties:

Honorable Gerald E. Rosen
United States District Judge
231 W. Lafayette, Room 802
Detroit, Michigan 48226

James A. Spear
130 Rhode Island
Highland Park, Michigan 48203

Derri T. Thomas
United States Attorney's Office
211 W. Fort Street, Suite 2001
Detroit, Michigan 48226

Social Security Administration
Office of the Regional Counsel
200 W. Adams, 30th Floor
Chicago, Illinois 60606

Marsha Heinonen
Deputy Clerk